State of the Union All right, we'll call the next case of the afternoon, number 17-20640, 2200 West Alabama v. Western World Insurance Company, and hear from Mr. Hogue. May it please the Court. I'm Rob Hogue, counsel for Appellant Western World Insurance Company. The District Court, Judge Hoyt of the Southern District of Texas, held that a liability insurance policy's insuring agreement language requiring, quote, wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises that a person occupies didn't really require that the complaining person occupy the premises. Is this little handout yours? Yes, Your Honor. It's not clear on the... Sorry, that's for us the appellant, yes, Western World. Okay. We have two handouts. Okay, yes. The District Court concluded that the complaining party didn't really need to occupy the premises, despite the language that it, premises that a person occupies, and because the District Court's holding is contrary to the plain meaning requirements of Texas insurance coverage law as applied by this Court and Texas State Courts, we ask that the District Court's judgment be reversed and judgment rendered in favor of Western World on its cross-motion for summary judgment. Our first handout... If there's anything in the record that could explain this type of policy, I would like to hear it. I find it so strange, this use of the term that we're talking about, personal and advertising injury, and so it must be some sort of specialized policy. I think it's referred to as a general commercial line or something, but still, is there something in the record that educates us a little bit about that? Well, Your Honor, the policy form itself is quite ordinary. It's drafted by the Insurance Services Office, and it's issued throughout the country many, many times. The readable form of it dawned in 1987, and we've had several iterations of the ISO, CGL, or Commercial General Liability form that have come along since then. It's divided into two main parts. Coverage A, which is bodily injury and property damage liability coverage, which most of us are familiar with, and then Coverage B, which is personal and advertising injury, which are a slightly different category of torts, such as defamation, or in this case, wrong for the eviction, entry, or invasion of the right of private occupancy of the premises that a person occupies. So Coverage B is the second half of the CGL form exclusion, and it's the subject of quite a bit of case law around the country, but these CGL policies, as you might note or recall, Your Honor, are casualty policies, therefore accidents or invasive torts of the type that we'll describe and talk about in this argument. Our first chart is the insuring agreement policy language illustration. The record reference at page 122, the Coverage B, personal and advertising injury insuring agreement language, requires that the insured show, and bear in mind that the insured bears the burden of proof on the insuring agreement requirements, as opposed to the exclusions on which the insurance company bears the burden. But in this context, on the insuring agreement burden, the insured, 2200 Alabama, the appellee, must show that the underlying suit alleges the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor. And in our first handout, we have diagrammed the sentence into its two component parts. First, the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises, and two, that a person occupies. That is a separate insuring agreement burden. In other words, that the invasion of right of private occupancy, or eviction, or wrongful entry, happened to an occupying tenant, not someone else, such as the underlying suit plaintiff, in this case, Dubrow, who indisputably had not yet occupied the premises. Why can't the argument be made just to show ambiguity, that the phrase that a person occupies is modifying the type of room, dwelling, or premises that eviction could result in liability? In other words, you know, a person doesn't occupy, an absurd example, a person doesn't occupy a pigsty, but a person can occupy a room, dwelling, or premises, premises being modified that a person occupies. Otherwise, it would seem the policy should have been written that a person is occupying. Well, Your Honor, the room, dwelling, or premises clearly contemplates, that's part of the first insuring agreement requirement, that a person occupies illustrates that it has to be an occupying tenant when the alleged eviction or wrongful entry. Well, that's your position. Yeah, I mean, why? Suppose a person's gone out of town for a month, hasn't paid his rent for six months, and you evict him while he's out of town. Well, Your Honor, there has to be some sustained occupancy of the premises. How is that shown by this language? Well, it's shown by the Texas Supreme Court Authority in the Kelly Coppedge case, which in this very insurance context, said that construed in its ordinary sense, and given its intended meaning, the word occupy suggests continued physical presence on the premises. So you're saying that the policy would or would not cover the landlord who evicted a tenant, threw out all his belongings on the street while he was out of town? It would cover in that instance, yes, Your Honor. Why? Because the tenant occupied or occupies the premises, has continuing physical presence, just happens to be out of town. A different example, Your Honor, would be a prospective tenant as Dubrow, the underlying suit plaintiff was here, who's allegedly deprived of their future interest to occupy. That's the crucial distinction here. And in fact What about a tenant who's in the process of moving in? I'm sorry, Your Honor? What about a tenant who's, like, in the process of moving in to a dwelling or a premises? Well, Your Honor, if there's an if there is actual occupancy of the premises, in other words, ownership or a leasehold interest, plus presence on the premises. So they've signed a lease. They're just sort of getting all their stuff in. They're setting up. Right. They would be occupying in that instance when they are evicted or invaded. But that's clearly not the case here. The district court correctly recognized on the record that Dubrow, the underlying suit plaintiff, the prospective tenant, had never been on the premises, had never occupied them. And in fact, the lease assignment out of which the underlying suit arose had not even been consummated. Judge Hoyt recognized that point correctly on the facts of the underlying case. So although these examples are instructive, what they don't illustrate is the facts of this case, the undisputed facts of this case. I thought Dubrow was in the process of establishing a restaurant. They had planned to, Your Honor. They were going to make an opening. But it's clear from the underlying suit allegations that they were in the midst of negotiations that were never completed. 2200 Alabama allegedly refused to sign off on the consent for the assignment of the lease from the occupying tenant. In other words, the tenant who was already on the premises, Soray, an assignment of that leasehold interest to Dubrow, the prospective tenant, which was never completed as the district court correctly recognized. So if Dubrow had moved in under those circumstances without the lease assignment having been completed, they would have simply been a trespasser. So there is a chronology element here involved, to be clear, but it's a very simple one. Only occupying tenants. Suppose, and I don't recall whether this is the other side's analogy or hypothetical or what, but suppose they had in fact signed a lease, but they hadn't started to move in and they were kicked out at that point. Would the policy cover them or not? It would not, Your Honor. They're not kicked out at that point because they haven't occupied yet and they're not occupying. That's the simple chronology element. Well, it says the wrongful invasion of the right of private occupancy. That's right. And then it goes on to say that a person occupies. I understand that, but you're saying, but wait a minute, you're saying it would not cover? That's right. They've signed the lease. They have the right to move in, but they have not moved in. And you're saying the policy would not cover that? That's correct, Your Honor. The policy is not about covering lease negotiations gone awry. It's about invasive. I'm saying it's a signed contract. You're the one who's characterizing this as lease negotiations gone awry. Well, Your Honor, if a person who has not been on the premises and has not occupied them has a realized right of occupancy through a completed contract, then they still haven't occupied the premises. Well, then you're broadening it from the cases that it allowed. As I understand, what confused me about this case was that the cases that have held on the plaintiff's side here have justified their reading of the policy either based on prospective right of occupancy, which is to say a tenant who hasn't completed negotiations, or a third-party nuisance and trespass, which is what you say this thing is supposed to prevent coverage of. And those two things don't make sense to me in tandem. I'm sort of at a loss as to what occupies its meaning here. Well, Your Honor, the plain meaning of occupies is physical presence. As Merriam-Webster, as Black's Law Dictionary, and as the American Heritage Dictionary, all the plain meaning sources indicate, as well as the Kelly Coppedge Court. The significant distinction, Your Honor, is that a mere right to occupy is the first requirement and that a person actually occupies is the second. This language used to only be the first half, the part that says eviction, entry, or invasion of the right of private occupancy, and it just stopped. Then, the that a person occupies language was added in order to make it clear... Probably because of some adverse court case somewhere, and insurance companies like to do this. They like to add on and add on and add on, creating more confusion than they started out with sometimes. Well, Your Honor, not if we look at that simple chronology element, and we can also give an example in this case. Suppose that the occupying tenant, Soray, had been the plaintiff. In other words, 2200 Alabama had cut a deal with Dubrow, the prospective occupying tenant, and said, we'll just cut out Soray, our occupying tenant, so that you'll pay us more rent. As the occupying tenant, Soray would file a suit to quiet the leasehold interest against 2200 Alabama, and that clearly would be both an invasion of the right of private occupancy and of a premises that the person, i.e. Soray, occupies. The lens that we have to wear to look at this case is the insurance contract and Texas principles of giving the policies words their plain meaning. If we say, as your examples have illustrated, that a right to occupy is the same thing as occupies, which is essentially what you're saying is a legal conclusive matter, then the two, the second requirement that a person occupies is read out of the agreement, which this Court's Crownover case prohibits and the Texas Supreme Court's Ewing construction case prohibits, and National Union v. Procker says we must give the policies words their plain meaning. Mr. Hoke, here's my difficulty. Even if I were to believe that your interpretation, your reading is the better one, the more forthright one, the more straightforward one, steer me to the authority that convinces me it is the unambiguous one, it is the undisputed one, because there's a fair amount of precedent out there that construes this the other way. Well, Your Honor, the key to those cases is, and when you do read them closely, if you have your Texas insurance coverage law lenses on, the conclusions in those out-of-state cases, which are reasonable expectation cases, is pretty shocking. The courts just actually say, yes, we know that a second requirement, the that a person occupies clause was added, but we just don't think it adds much. We think we're still going to examine it under what are the things that constitute an invasion of the right of private occupancy. And there are many things that constitute the invasion of the right of private occupancy. The clarification in the policy that exists on this case is that the invasion happened with regard to a property that someone occupies who is the complaining party. That's a relatively simple chronological possessory distinction that this policy language clearly implies. There are at least three cases, Your Honor, that we've cited in our brief, the Alimaz cases, the auto owners versus Robinson, and they say it's very clear that now that that language is there, that a person occupies, no one can seriously argue that a prospective occupancy, which is all that Dubrow had here by the district court's express recognition, qualifies as an insuring agreement matter for coverage under the policy. And, of course, we've also offered the argument that lease assignment in any event, so they didn't even get the right to occupy. All right. You have time for rebuttal. Mr. Knight. Mr. Knight, while it's still ringing in our ears, how about responding to that last comment made by Mr. Hogue that you didn't even allege that you had the right to occupy, et cetera, et cetera, and I believe you're saying that was not raised timely or properly in opposition to summary judgment and is therefore waived because he waited until his reply. I'm sorry, Judge, can you repeat the question? I apologize. The last comment Mr. Hogue made was, you know, that's assuming that Dubrow had the right to occupy the premises because he hadn't even signed something, and as I understand it, you're claiming, well, we don't even need to reach that point because it's waived because you didn't timely raise it in district court. You waited until your reply to my response on summary judgment. Thank you, Judge. Now I understand. Yes, first of all, that's right. To the extent that they're going to make the argument that somehow when you look at the pleadings in the underlying case, they can be construed in a way such that Dubrow never actually claimed to have obtained a right of occupancy or a leasehold interest. Yes, they didn't raise that in the trial court level as a way to try to defeat summary judgment. It's waived on appeal, but I'm not even that concerned about the waiver point because frankly, the allegation that Dubrow or the suggestion that Dubrow didn't make that allegation is just fundamentally false. When you look at Dubrow's allegations in the underlying lawsuit, they clearly and unequivocally alleged, even if counsel for the insurance company doesn't like the allegation or disagrees with it because the negotiation somehow didn't play out their full term, Dubrow nevertheless alleged that West Alabama leased commercial space that was used as a restaurant in Houston to Soray. That was the original tenant. Dubrow further alleged that Soray assigned the lease and that West Alabama, as the landlord, formally consented to the assignment such that, and this is a quote from the underlying pleadings, this is Dubrow's take as true for purposes of the eight corners analysis, quote, Dubrow obtained a direct interest in the premises. Dubrow further alleges, even if that wasn't enough, that they are the, quote, the rightful tenant of the space, and that's at record on appeal 208-209. That's their pleading, and if you look at the bottom page, it bleeds over into the next page, 208-209. They further allege that as the rightful tenant, they were precluded from fully opening their new restaurant. They allege that they took many steps in terms of getting liquor licenses and all these other things. They claim that they were financially damaged because they couldn't fully operate their restaurant because West Alabama, as the landlord, interfered with their right of occupancy. So there's no question that when the court applies this duty to defend analysis, and that's what we're dealing with in this case, the duty to defend. We're not at the duty to indemnify stage yet, and that's a different analysis. The duty to defend, as this court has held and as the Texas Supreme Court has held on numerous occasions, they give us a lot of instruction on how this rule applies. In the first community bank shares case that I cited from this court, cited it in the brief, the standard is this. If the underlying complaint pleads facts sufficient to create the insurer has a duty to defend the entire case, even if the allegations are demonstrably false, fraudulent, or groundless, and even if some of the injuries alleged are not covered or fall within some exclusion. That's the standard. The Texas Supreme Court has further advised that in the Zurich versus Nokia case, the court is required to resolve all doubt regarding the duty to defend in favor of the duty and to construe the pleadings liberally. I'm looking at your pleadings at pages 208 to 209 and I do not see the word quote rightful tenant except in your pleading. I mean except in your characterization of what the circumstances amounted to. Paragraph 15 is the operative fact. So Judge Jones, if you look at paragraph 16, and that's why I made the comment that it bleeds over to the next page. I looked at that and this is your explanation. What it says here is at this point plaintiffs referring to Dubrow were the rightful. That's not a direct quote. If that's a direct quote from that November 7th, the quotation marks were left out. Because paragraph 15 is the operative fact. On November 7, landlord through council communicated its agreement via written letter. The November 7th letter accepted all material terms of the contract, blah blah. But I mean, you know, the first thing that occurs to a You didn't attach the November 7th letter to the pleading, did you? Well, it's not my pleading. This is Dubrow's pleading. I understand. I understand. But that's what the eight corners rule is all about, right? The eight corners rule is taking what is alleged in this document. Yes, but it has to be the facts, not the causes of action. Correct. And I'm looking at the factual background where Dubrow alleges in connection with all these negotiations that you've just recited, at that point plaintiffs Dubrow were the rightful tenants of the space. And he says it's a breach of contract, but basically what he's saying is an anticipatory repudiation. That's one of several causes of action they have. They argued that they were the rightful tenants of the space and that they're entitled to occupancy and that West Alabama, as their new landlord, kept them out. They've sued for breach of contract, promissory estoppel, negligent misrepresentation. There's all types of theories here. But under the eight corners rule, the court has to accept what's been pleaded as fact, as true. Even if we disagree and even if we think it's not tenable, we accept it as true. That's the eight corners rule. I'd like to shed some light on this language and a lot of the questions that y'all had in terms of interpreting this clause and why does this clause exist in terms of the occupancy. Because when you go back and look at the cases that even the carrier is relying on, actually defeat their argument outright and it explains the background of this clause. Western world defined personal and advertising injury broadly as including injury arising out of the wrongful invasion of the right of private occupancy of a premises a person occupies. So the language of a premises that a person occupies is important. And it's important because it confirms that this aspect of personal and advertising injury coverage is intended to apply to the landlord-tenant situation. It's not intended to apply to where the complaining party against the landlord has an interest in the premises, has what one of their chief cases, Powell, describes as a possessory right to the premises. So in this context, if you take that language out that we've been talking about here, premises that a person occupies, you're left with a grant of coverage that says this. Injury arising out of the wrongful invasion of the right of private occupancy, period. So what you had was situations where people were... But that would have covered your case. According to what you say, the insurance company would have been required to defend on that basis. They would have covered the case. But as you pointed out earlier, sometimes insurance companies add language to policies in reaction to what's going out there in case law. What was going on is you had a lot of plaintiffs that were suing potential landlords for fair housing and discrimination violations. They were alleging, look, I have a federal right to private occupancy. I have a right to occupancy. And you've turned me down as your tenant. So I'm going to sue you. And then the landlords, or potential landlords in those situations, were turning that over to their insurance carriers. And the carriers were looking at this and saying, we've got to defend. They didn't want to defend that because it's not a legitimate landlord-tenant dispute. There's no landlord-tenant relationship yet. The landlord refused to lease the room or the house. But nevertheless, if you agree that the first, the invasion of the right of private occupancy is enough to require defense on the part of the insurance company, then that a person occupies does nothing in that insuring agreement. Well, they're saying that that's another— It's rendered superfluous. They're saying that's another requirement that has to be met. Well, the language has to mean something, doesn't it? It does. And what the cases that I'm describing for you show that it means is that the policy is not intended to respond to situations where the landlord-tenant relationship never came into existence. Well, that's not what the North Carolina case was, which you heavily relied on. That's exactly what the North Carolina case was. No, that was a person who was—that was one of those Fair Housing Act cases. No, Your Honor, it was not. In the North Carolina case, if you're referring to—are you referring to the Hobbs Realty case? Yes, sir. Yes. In the Hobbs Realty case, that's why the case is so important. Hobbs Realty, a family leased a rental, a summer rental from a landlord, and the agreement was signed. It was inked. It was all ready to go. They went to go pick up the keys so that they could move into their rental unit, and the landlord said, no, I'm not going to give you the keys. And it had some discriminatory background to it, but the point of the case is they had an agreement in place. There was a landlord-tenant relationship established through their agreement. Then the landlord tried to back out of it. The tenants never got the chance to move in. So the argument that the insurance company made is the same exact argument we're hearing today— And they argued the policy—I'm sorry, and the court concluded the policy was ambiguous. The court concluded that the language that we've been talking about here today, this of a premises that a person occupies, does not mean physical occupancy. The key requirement here is did they— But it also says ambiguous, and neither party here argued that. I mean, it's still—that's a decision for the court in any case, but I'm just pointing that out. But I did argue ambiguity, to be clear. My pleading in the underlying case and briefs and summary judgment also raised the issue of ambiguity. But what Hobbs really stands for is it squarely addresses the argument of the insurance company. Does physical—do you have to physically take possession in order for this language to be satisfied? And the answer is no. The concept of a premises that a person occupies means that there's an allegation in the underlying suit that establishes the existence of a landlord-tenant relationship, not a prospective landlord-tenant relationship that you have in situations where the landlord completely turns the person down and says, no, you're not going to be my tenant. Okay? That's what every case before the Court, the Powell, the Robinson, the Hobbs-Riley, every case is consistent in that regard. And just to go a little further on this, though, if the language meant only what you say it means, then it would have been a better phrasing to say, covered if there's an invasion of the right of private occupancy after a contract has been entered into. Occupies does not mean after there is a, you know, legally enforceable agreement. But the cases that they're relying on would disagree with that interpretation, including Powell, including Robinson. The reason the language was not satisfied in those cases is because all that you had was a prospective tenant. I understand exactly what you're saying. And I'm saying if the company had wanted to articulate language that would preclude coverage in those situations of a person who just walked in the door and got rejected, then the last clause would have said, instead of it saying that a person occupies, it would have said, that a person has contracted for, or something like that. They could have done any number of things to make that. But occupies does not mean the same as contracted for. Occupies mean, I mean, that's, you know, your idea is untenable. It means it has to do something with physical something or other. Their cases, including Powell, equates occupies to the idea of having a right of possession, which you gain through a lease. That's occupies. They seize on very isolated aspects of various dictionary definitions that says occupies means... Well, Caesar occupied Gaul, but I don't think he had a lease. Pardon me? Never mind. She's referring to Julius Caesar. Okay. I didn't hear. I apologize. They're focusing on these narrow dictionary definitions of occupies as equating to one thing and one thing only, and that's physical presence. And that's not only an incomplete reading of dictionary definitions, it's contrary to the very cases that they've cited from the very beginning when they wrote me the letters denying their duty to defend. Where in the policy might we see some inkling of the fact, because I've been looking in the record excerpts at the portion of the policy included there, that this has to do with the landlord-tenant relationship? I mean, is there anything in the policy that we can hang our hat on? All the cases that the parties have cited... I'm not asking about cases. I'm just trying to find something in the policy. You said this has to do with the landlord-tenant relationship. I'm just asking for some proof of that. I think that the... I think the proof of that would be, I mean, just in this aspect of the definition of personal and advertising injury itself. It says, injury arising out of the wrongful invasion of the right of private occupancy of the premises that a person occupies. It goes on to say, committed by or on behalf of its owner, landlord, or lessor. So the landlord or lessor, I think, puts it in that context. Mr. Knott, is there any virtue at all in prolonging this and getting the definitive authoritative word from my former colleagues? In terms of? Certifying the question to the Texas Supreme Court? Or should we just dispose of it once and for all? Well, you know, that's certainly an option the court has. But to me, when you're confronted with a situation where every single court from around the country that has looked at this very language, and it's the Powell case, it's the Robinson, it's the Hobbs-Riley, every single case has... requires physical presence. And for all of the reasons that y'all have addressed earlier today, the idea that it requires physical presence just leads to absurd results. And the example that I cited in my brief was a landlord who signs two leases on one day, and one tenant moves in now, and one tenant plans to move in in one hour. And then the landlord says, I don't want to lease either one, and locks the door. There's coverage for one situation, but not the other. Simply by virtue of the fact that the first tenant moved, what, hung her coat up in the closet? Moved one box? Or does it require two boxes? Or maybe three? How much physical occupancy do you need? Your clients agreed to that insurance. I mean, I'm joking. But two questions. What is the status of the Dubro litigation at this point? It's ongoing. No... It has not been tried. It's in... It's pending in Judge Baker's court in Harris County. My understanding is that there's been several trial settings, but it has not come to fruition in terms of a trial, nor has... They're waiting to find out whether there's insurance coverage, huh? I don't know that to be true either. Okay. I'm just... This is what troubles me about the Seventh Circuit opinion, and I think a whole... A bunch of these cases go back to the Seventh Circuit opinion, don't they? When you say the Seventh Circuit, can you tell me... U.S. v. Security Management. Okay. We agree with the district court's... I'm on page 265, first column. We agree with the district court's criticism of the that-a-person-occupies portion of the definition. It does not add much clarity to the cause. Then it goes on and says, by limiting coverage to those instances, blah, blah, blah, the policy that-a-person-occupies, the policy seemingly excludes at least unapproved subleases from coverage. By extending coverage to prospective right holders, it appears to us that the district court impermissibly extended the breadth of coverage that Aetna contracted to provide. Unapproved subleases. And again, that circles back to this notion of, did the alleged tenant have a right of possession? No. I think... But see, and that it occupies seemingly excludes unapproved subleases. So if the tenant is a woman and she's letting her boyfriend live there, but she moves away for a period of time, then if that's what this policy means, then they can't evict the boy... they can't have coverage when they evict the boyfriend. He doesn't have a... he doesn't... he can't allege that he has a legal right to be there. That's not... that's exactly the opposite of what we're dealing with in this case. Dubrow alleges that the agreement progressed to the point where they became the actual tenant and then were locked out. That's exactly what this coverage is designed to do. Yes, as the landlord, the landlord read the policy. 2200 West Alabama read the policy and says, I have coverage for landlord-tenant disputes. I'm being sued by Dubrow who says, although I disagree with them, they're my tenant and that I locked him out. That's what this policy is designed to cover. And of course, the only other... I mean, this is a very complex case to me. I'm not saying I would... you know, where I come down at all, but I do... I assume that in the ongoing litigation, your client is taking the position that there was no enforceable contract. Of course, but that's not a proper consideration... No, you're allowed to do that. ...under the eight corners rule. Right, right. You're right, of course. Okay. Unless there's any further questions? No. Okay, thank you. Okay. Mr. Hogue. Thank you, Your Honor. Judge Willen, in response to your question, the auto owners versus Robinson case, the U.S. District Court in the Middle District of Georgia recognized expressly that the addition of the independent clause, quote, that a person occupies to the insuring agreement requirements on which the insured bears the burden of proof cannot be mistaken or ignored as 2200 Alabama's argument here necessarily requires. In this regard, the Robinson court said, quote, the court finds the language unambiguous. It plainly states that coverage exists for the invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This is crucial. Occupies denotes present, not future tense. Reading the entire phrase yields but one reasonable interpretation, that coverage exists when someone alleges interference with present occupancy, not future occupancy. That's that simple chronological demarcation that I offered to the court in the opening argument. So the auto owners versus Robinson court got it exactly right, as do several of the other out-of-state cases that we've cited. Even more importantly, recall that, of course, the court is supposed to apply the substantive law of the state of Texas. Texas is very much a plain meaning state. Judge Jones noted that there should be some effort to keep the that a person occupies clause in the agreement in terms of having any meaning. And if you accept 2200 Alabama's argument here, a mere right to occupy is enough. The coverage argument is therefore established. Well, that reads the second requirement completely out of agreement, by necessity. It has to, mechanically. As to our position that there wasn't even an alleged right to occupy here, the district court correctly recognized that as a fact matter in terms of the underlying suit allegations at the record on appeal at 419, quote, the lease was not consummated. And there the judge was referring to the lease assignment from the occupying tenant, Soray, to the prospective new tenant, Dubrow. Well, I think it's pretty obvious that they are, from those allegations, that they are claiming breach of contract, whether it was an enforceable contract under the statute of frauds may be a different thing. But I was toying with him about that so-called rightful occupancy language. But they clearly say in paragraph 15 that the landlord had consented to all material terms. Well, Your Honor, the other thing that is crucial about this part of it is they also, in the facts that are alleged, it's clear that the agreement was not completed. It's one thing to say we agree to all. Yeah, but that completed as some material terms under the UCC at least means you can have a contract even if there are non-material terms that aren't hashed out. Well, if that's so, Your Honor, it doesn't get them over. That is so as to the UCC. Even if that's so, Your Honor, it doesn't get them over the second hurdle, which is they have to be a possessory tenant, not a prospective tenant. They have to be an occupying tenant, not otherwise. As far as our argument that they never even alleged in the underlying suit the right to occupancy, we did raise that in the district court at the record on appeal, pages 355 to 357. But was that in your reply to their response to your motion for summary judgment? I don't recall that, Your Honor. I believe it was in the summary judgment record proceedings. I don't recall whether it was a reply or in our— Well, don't you—do you agree that would make a difference, that you waited until your reply to—you moved for summary judgment, they responded, and then you bring up this new point in your reply? If you do that, it's probably waived. Well, I don't think so, Your Honor, because we are in rebuttal in our reply. We're responding to arguments raised by 2200 Alabama, which I think we clearly did. So the district court was clearly aware of the argument and didn't find waiver of it on our part, but rather disagreed on the fundamental question of whether the right of occupancy equals occupancy itself. And that's the—that's the crux of 22 Alabama's—2200 Alabama's case here. Their argument necessarily says that if we have the right to occupy, if the national insurance plan has the right to occupy, that is as good as occupancy itself. They cannot win unless that is the argument that is accepted. And because Texas requires the plain meaning interpretation of insurance contracts, and the plain meaning of this contract requires that the premises in question be premises that a person occupies, they cannot meet their insuring agreement burden. Thank you. All right, thank you very much.